UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
CHIEF MAGISTRATE JUDGE

6500 Cherrywood Lane
Greenbelt, Maryland 20770
Telephone: (301) 344-3593

September 4, 2025

LETTER TO COUNSEL:

    RE:    *Marta S. v. Bisignano*[1]
            Civil No. TJS-24-2823

Dear Counsel:

    On October 1, 2024, Claimant Marta S. petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). ECF No. 1. The parties have filed cross-motions for summary judgment. ECF Nos. 14 & 16. These motions have been referred to the undersigned with the parties' consent pursuant to 28 U.S.C. § 636 and Local Rule 301.[2] Having considered the parties' submissions, I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). Following its review, this Court may affirm, modify, or reverse the Commissioner, with or without a remand. *See* 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89 (1991). For the following reasons, I will **DENY** the claimant's Motion and **GRANT** the Commissioner's motion.

    Marta S. filed her applications for DIB and SSI on April 13, 2021. Tr. 17. She alleged a disability onset date of September 11, 2020. *Id.* Her applications were denied by the Social Security Administration initially and on reconsideration. *Id.* At her request, a hearing was held before an Administrative Law Judge ("ALJ") on June 27, 2023. Tr. at 47, 49. The ALJ found that Marta S. is not disabled and issued a written opinion denying her claim. Tr. 17-34. The Appeals Council denied the claimant's request for review, making the ALJ's decision the final, reviewable decision of the agency. Tr. 1-6.

    The ALJ evaluated Marta S.'s claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that the claimant has not engaged in substantial gainful activity since September 11, 2020 (the alleged onset date). Tr. 19. At step two, the ALJ found that the claimant suffered from the following severe impairments: left shoulder impingement syndrome, right shoulder dysfunction status-post arthroscopy, right

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Leland Dudek as the defendant in this case.

[2] This case was previously assigned to Judge Austin and subsequently to Judge Miller. It was reassigned to me on July 8, 2025.

shoulder adhesive capsulitis, bilateral knee dysfunction status post arthroscopy, bilateral trochanteric bursitis, osteoarthritis, migraine headaches, fibromyalgia, depressive disorder, anxiety disorder, post-traumatic stress disorder, and attention deficit disorder. Tr. 19-20. At step three, the ALJ found the claimant's impairments, separately and in combination, failed to meet or equal in severity any listed impairment under 20 C.F.R., Chapter III, Pt. 404, Subpart P, App. 1 ("Listings"). Tr. 22. The ALJ determined that the claimant has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires a sit/stand option such that she can sit at least two times per hour for 15 minutes while remaining on task; cannot climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch or crawl; can occasionally reach overhead bilaterally; can have occasional exposure to extreme temperatures, humidity, wetness, bright sunlight; can have no exposure to fumes/dusts/odors/gases/poor ventilation, other pulmonary irritants or to hazards such as dangerous moving machinery or unprotected heights; She will be off task up to 10% of the workday due to symptoms of the impairments and would be absent up to 1 day per month on a regular basis due to symptoms of her impairments.

Tr. 24.

At step four, the ALJ determined that the claimant could not perform any past relevant work. Tr. 32. At step five, relying on testimony provided by a vocational expert ("VE"), and considering the claimant's age, education, work experience, and RFC, the ALJ determined that there were jobs in significant numbers in the national economy that the claimant could perform, including mail sorter, lamination machine operator, and stenciler. Tr. 33.

Marta S. argues that the ALJ's decision is legally insufficient because the ALJ's RFC "does not reflect all of [her] substantiated limitations caused by her impairments." ECF No. 14-1 at 18. A claimant's RFC represents the most they can still do despite their limitations. 20 C.F.R. § 404.1545(a). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 SSR LEXIS 5, *1 (July 2, 1996). A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* When evaluating a claimant's RFC, an ALJ must include a narrative discussion describing the evidence that supports it. *Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021). In doing so, an ALJ must consider all of a claimant's "physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019) (internal quotation marks and citation omitted). The narrative discussion must show "how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7. Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding on the claimant's RFC. *Id.*; *Thomas*, 916 F.3d at 311 ("Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion."). An ALJ need not mention every piece of evidence, so long as she builds a logical bridge from the evidence to her conclusion. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Marta S. advances several arguments that her limitations are greater than those described in the RFC. The Court will address each argument in turn.

First, Marta S. argues that the ALJ improperly discounted the opinions of her physical therapist, Lauren Haines. ECF No. 14-1 at 18. According to Marta S., the ALJ did not sufficiently explain the basis for her conclusion because she "only cites two Function Reports completed by [Marta S.] . . . and does not cite to or discuss which specific medical evidence she feels is inconsistent with Ms. Haines's opinion." ECF No. 14-1 at 19-20. Marta S. also argues that the ALJ should have found Ms. Haines's opinions persuasive because Ms. Haines's treatment of the claimant, the claimant's own statements and testimony, imaging findings, and examinations by other physicians support a finding that Marta S. experienced pain and difficulty performing certain movements despite medical intervention. *Id.* at 20. Finally, she argues that the ALJ did not have enough information about Marta S.'s activities of daily living to rely on those activities to discredit Ms. Haines's opinions. *Id.*

An ALJ must consider the following five factors when evaluating the persuasiveness of medical opinions:

> (1) supportability; (2) consistency; (3) a physician's relationship with the claimant; (4) a physician's specialization; and (5) other factors, like a physician's familiarity with the evidentiary record or their understanding of the SSA's policies and evidentiary requirements.

*Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)). Supportability and consistency are the most important of these factors. *Id.* In her analysis, the ALJ stated that "[t]he assessment is supported by Ms. Haines' treatment of the claimant for physical therapy, but not persuasive because it is somewhat inconsistent with the medical evidence of record and even to the claimant's own function reports." Tr. 31. (citing Ex. 26F, 3E, & 9E). She also stated:

> The assessment is not persuasive because Ms. Haines has provided no basis for the limitations, no basis for the diagnosis, no indication of testing, or the physician that made the diagnosis. The limitations somewhat underestimate the claimant's functional abilities. She is able to drive, clean, go out, care for a dog(s) and walks unassisted, and is generally noted to have a normal gait, though some physical exams note an antalgic gait.

*Id.* (citing Ex. 27F, 34F, p.3).

The ALJ properly focused on the supportability and consistency of Ms. Haines's medical opinion in her analysis. Marta S.'s argument that the ALJ erred by not specifying which particular evidence was inconsistent with Ms. Haines's opinion is unconvincing. The ALJ considered medical opinions from nine other sources alongside the opinion of Ms. Haines. The opinions of state agency medical consultant, Dr. A. Totoonchie; Marta S.'s primary care provider, Dr. Royster; Dr. Farrid Murshed, who saw Marta S. for a consultative examination in August 2021; and her shoulder surgeon, Dr. Ajayi, were all inconsistent with Ms. Haines's assessment of the claimant's

functional abilities or work limitations. Tr. 29-32. And the ALJ cited two assessments completed by Marta S. in which she described daily activities that exceeded the Ms. Haines's opinion of her functional capacity. *Id.* Finding no error in the ALJ's opinion on this point, the Court will not reweigh competing evidence, as requested by Marta S.

Marta S.'s argument that the ALJ erred by considering the nature but not the extent of the claimant's activities of daily living is likewise unconvincing. Regardless of the extent to which she engages in these activities, Marta S.'s ability to "drive, clean, go out, care for a dog(s), walk[] unassisted, and generally . . . have a normal gait" is at odds with Ms. Haines's opinion that she "could sit for one hour, stand for less than 5 minutes and would lose her balance when walking for less than one minute." Tr. 31. And in the Task Capacity Evaluation, Ms. Haines noted, "[Marta S.] states she is unable to cook due to poor standing tolerance." Ex. 26F. Therefore, the fact that Marta S. can cook *at all* indicates that the evidence supporting her opinion is inaccurate. This is distinguishable from *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018), cited by Marta S., where the ALJ concluded that the claimant's daily activities "are not those typically associated with an individual alleging the pain, severity, and limitations as posed by the claimant." Notably, the ALJ did not use Marta S.'s activities of daily living to draw bald conclusions regarding her "ability to do sustained work-related activities on a regular and continuing basis." *See Oakes*, 70 F.4th at 216 (internal citations omitted). Rather, the ALJ found Ms. Haines' medical opinion unpersuasive in light of a well-developed mix of record evidence. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F. 4th 596, 608 (4th Cir. 2025) (distinguishing a case with a well-developed record from *Oakes*, where the record was 'exceedingly sparse').

Second, Marta S. argues that substantial evidence supports limiting her to "unskilled, non-production pace work" to account for her limitations in concentration, persistence, maintaining pace, and adapting or managing herself while on-task. ECF No. 14-1 at 24.

However, this point is moot because even if the ALJ had included the limitation to "unskilled, non-production pace work," Marta S. does not allege that the work identified at step five would be beyond the RFC articulated by the ALJ. *See* ECF No. 16 at 10 (citing "Mail Sorter," Dictionary of Occupational Titles ("DICOT") 209.6870926, 1991 WL 671813; "Lamination Machine Operator," DICOT 569.686-046, 1991 WL 683893; "Stenciler," DICOT 659.685-026, 1991 WL 685832).[3] Because there is no apparent conflict between the vocations identified by the

---

[3] "Mail Sorter" is defined as "light work." The worker is expected to be able to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form[ and d]eal with problems involving several concrete variables in or from standardized situations." 1991 WL 671813.

"Lamination Machine Operator" is defined as "light work." The worker is expected to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[ and d]eal with problems involving a few concrete variables in or from standardized situations." 1991 WL 683893.

"Stenciler" is defined as "light work." The worker is expected to be able to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[ and d]eal with problems involving a few concrete variables in or from standardized situations." 1991 WL 685832.

4

VE and the additional limitations that Marta S. alleges that should have been included in her RFC, even if the Court found error in the ALJ's analysis, Marta S. has not adequately articulated grounds for remand.

Furthermore, the limitations articulated in the ALJ's opinion are supported by substantial evidence. Under the substantial evidence standard, a court must ask "whether [the administrative record] contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* at 103. "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "This court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence." *Johnson v. Barnhart*, 434 F. 3d 650, 653 (4th Cir. 2005) (per curiam).

The ALJ found that Marta S. "will be absent up to one day per month due to migraines and/or other symptoms" and "will be off task . . . up to 10% of the workday and this will result from symptoms of ADD as well as other disorders." Tr. at 32. To support her conclusion that Marta S. has a moderate limitation in concentrating, persisting or maintaining pace, the ALJ noted:

> [s]he was able to graduate from college, study as a veterinary technician, work as a groomer, and a tutor The claimant often reported adequate symptom control from psychiatric medications. Additionally, treating practitioners did not observe that the claimant was overly distractible or slow. The claimant has reported watching TV and reading for pleasure, which requires some concentration and persistence. She said that her eyes prevent her from focusing but she was able to complete two detailed function reports. She has also reported doing a variety of daily tasks that require some concentration, persistence, and pace. She obtained a drivers license and drove herself to the consultative examination.

Tr. 23 (internal citations omitted). The ALJ also thoroughly analyzed Marta S.'s statements and testimony, medical evidence, and medical opinions regarding her mental illness, pain, and treatment history. Her migraines are treated with Maxalt and Topamax, which she tolerates well, and her ADHD is treated with Strattera, which has improved her symptoms. Tr. 28. "Mental status exams . . . note the claimant is cooperative, with normal behavior and speech, ethymic mood and wide range appropriate affect, logical and linear thought processes, appropriate thought content, with no delusions or hallucinations, good attention, fully-oriented, and possessing good memory and judgment. *Id.* (citing Ex. 10F). Five medical experts opined on Marta S.'s mental limitations. Tr. 29-31. The ALJ properly considered the supportability and consistency of each to determine its persuasiveness. She included a narrative discussion describing how the evidence supports her conclusions, as is required. The Court finds no error.

Finally, Marta S. argues that substantial evidence shows that she would be "off task greater

---

All three of these vocations require specific vocational training "up to and including 1 month." 1991 WL 671813; 1991 WL 683893; 1991 WL 685832.

5

than fifteen percent of the workday on a regular basis" due to her mental health symptoms and chronic pain. ECF No. 14-1 at 24.

But as the Court has already noted, the ALJ's RFC included limitations to account for Marta S. mental illness and chronic pain that is supported by substantial evidence. And Marta S. cites no evidence in the record to support her contention that she would be off-task at least 15% of the time. Considering the thoroughness of the ALJ's analysis, the logical connection between the evidence and the ALJ's conclusions, and the lack of contrary medical evidence, the Court finds no error.

For the reasons set forth herein, Marta S.'s Motion for Summary Judgment (ECF No. 14) will be **DENIED**, and the Acting Commissioner's Motion for Summary Judgment (ECF No. 16) will be **GRANTED**. The Clerk is directed to **CLOSE** this case. Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/
Timothy J. Sullivan
Chief United States Magistrate Judge